UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARIA MARRERO, | : | |
| Administratrix for the | : | |
| Estate of Ernesto Morales, | : | |
|    Plaintiff, | : | |
| | : | |
| v. | : | 3:14-cv-00831-WWE |
| | : | |
| CITY OF HARTFORD, JAMES ROVELLA, | : | |
| KENNETH MEDINA, WILLIAM COTE, | : | |
| KENNETH LABBE, and ROBERT IOVANNA,: | | |
|    Defendants. | : | |

## MEMORANDUM OF DECISION ON
## DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

This is an excessive force action by plaintiff Maria Marrero on behalf of decedent, Ernesto Morales. Plaintiff's claims include excessive force in violation of the Fourth Amendment and the Connecticut Constitution (Counts I and IV); assault and battery (Count II); reckless and wanton misconduct (Count III); and municipal liability pursuant to Conn. Gen. Stat. §§ 52-557n and 7-465 (Count V). Defendants City of Hartford, Chief of Police James Rovella, Officers Kenneth Medina, William Cote, Kenneth Labbe, and Robert Iovanna have moved for summary judgment on all counts. For the following reasons, defendants' motions will be granted in part and denied in part.

## BACKGROUND

The following background was gleaned from the parties' statements of fact, affidavits, deposition transcripts, and other exhibits, including video from a surveillance camera at the scene.

On July 11, 2012, at 1:00 a.m., four Hartford police officers – William Cote, Kenneth Medina, Kenneth Labbe, and Robert Iovanna – were traveling east in a police cruiser on Park Street when they observed a known drug dealer riding a bicycle south on Wadsworth Street.

Officer Labbe engaged the cyclist in a brief conversation about operating the bike after dark without proper illumination. The parties then continued on their respective ways.

The officers returned to the area fifteen minutes later, where they observed the same individual on foot. The officers decided to search for the bicycle to see whether they could locate any evidence of contraband, so they pulled into the parking lot at 60 Wadsworth Street, where they spotted a bicycle leaning against a fence to the south of the parking lot.

Officer Medina exited the police cruiser and walked toward the bicycle. As he approached, he observed passengers in a parked Honda station wagon. Medina stopped near the front passenger quarter panel and said loudly to the occupants, "Let me see your hands!"

Officer Iovanna immediately exited the right rear passenger side of the police cruiser and approached the driver's side of the Honda. Officer Cote also exited the cruiser, while Medina and Iovanna continued to order the occupants of the Honda to show their hands.

The driver of the Honda, Ernesto Morales, reached for something in the cabin, then started the ignition. Officer Iovanna yelled, "He's going to go!" As the Honda began to proceed forward, Labbe drove the nose of the police cruiser into the front left quarter panel of the Honda to prevent it from leaving the parking area. At this point, the three other officers had surrounded the Honda with their guns drawn. The Honda then reversed briefly away from the police cruiser before returning forward and to the right, around the front of the cruiser into the parking lot.

Officer Cote contends that he was standing in front of the police cruiser, unprotected, as the Honda accelerated toward him, but plaintiff maintains that Cote positioned himself *behind*

the nose of the cruiser, outside the forward path of the Honda. A parking lot surveillance camera captured the incident, but it was positioned at the far end of the lot. The angle of the camera makes it difficult to pinpoint Officer Cote's precise location relative to the Honda.

Cote fired seven rounds into the Honda, killing Morales. As the station wagon progressed across Cote's location, three bullets entered the front windshield; two bullets entered the driver's side window; and a sixth bullet entered through the driver's side rear passenger window, striking the Morales in the back. The ballistics of the seventh bullet are unknown. Plaintiff contends that the trajectory reports indicate that each of Cote's shots was fired from a position outside the Honda's path of travel. Moreover, plaintiff submits that Cote continued to discharge his weapon after the station wagon had proceeded away from him.

The Honda sped past Cote, across the parking lot, and through the adjacent lawn where it crashed through the wall of a residential apartment.

As of July 11, 2012, James C. Rovella was employed by the City of Hartford as the Interim Chief of Police. He was not on the scene.

## DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. American International Group, Inc. v. London American International Corp., 664 F.2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual

issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).

If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate.  <u>Celotex Corp.</u>, 477 U.S. at 323.  If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met.  <u>Anderson</u>, 477 U.S. at 249.

**Excessive Force Claims against the Officers at the Scene**

"[T]here can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment."  <u>Tennessee v. Garner</u>, 471 U.S. 1, 7 (1985).

*"[A]ll* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach."  <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989).

"[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  <u>Id.</u> at 397.  The test of reasonableness requires careful attention to all of the facts and circumstances of the case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.  <u>Id.</u> at 396.

The constitutionality of a seizure is determined by balancing the intrusion on the individual's Fourth Amendment rights against the government's interests alleged to justify the intrusion. Scott v. Harris, 550 U.S. 372, 383 (2007).

> The intrusiveness of a seizure by means of deadly force is unmatched. The suspect's fundamental interest in his own life need not be elaborated upon. The use of deadly force also frustrates the interest of the individual, and of society, in judicial determination of guilt and punishment.

Garner, 471 U.S. at 9. Accordingly, only commensurate substantial government interests can support a decision to use deadly force to effect a seizure.

Here, it is clear that Morales was attempting to evade arrest by flight. But prior to his attempted flight, it is not clear whether Morales had committed *any* crime, and whether he posed an immediate threat to the safety of Officer Cote or others is genuinely in dispute. Moreover, where versions of the facts differ, the court must consider plaintiff's version and make all permissible inferences in her favor. See Cowan 352 F.3d at 763.

Similar to the circumstances in Cowan, plaintiff submits that Cote was never in the direct path of the Honda as it approached him. Plaintiff's evidence suggests that Cote was not in danger of death or even physical harm when he continued to fire into the rear side of the Honda as it passed him. See id. at 763 ("Looking at *only* [plaintiff's] version of the events thus suggests that no reasonable officer in [defendant's] position would have believed that at the crucial moment use of deadly force was necessary."). In Cowan, the Second Circuit held that in order to accept the officer's argument that, as a matter of law, his actions were objectively reasonable, one would have to accept, as a matter of fact, that the automobile was actually *bearing down on him*. Id. at 762; see also Soto v. Gaudett, 862 F.3d 148, 159-61 (2d Cir. 2017). As such facts were genuinely in dispute, the Court found summary judgment to be inappropriate. Id. at 765.

5

> Moreover, even if [defendant] was in grave danger, [plaintiff'] expert witness evidence casts doubt on whether the decision to shoot under such circumstances was an objectively reasonable one. [plaintiff's] expert stated that proper police procedure when faced with an on-coming vehicle is to get out of the way rather than shoot, since shooting may disable the car or the driver and put the police officer (and any bystanders) in even greater danger. Thus, even if [defendant] reasonably believed that the on-coming car posed a serious threat of harm to him, if [plaintiff's] evidence is believed, the decision to fire two shots at the car may well have not been one that a "reasonably competent officer" would have made.

Id. at 763.

Firing at a moving vehicle not only presents the new threat of errant shots harming innocent parties but also is unlikely to actually stop the vehicle and the threat it presents. Should the driver be wounded or killed by shots fired, the vehicle will almost certainly proceed out of control and could become a serious threat to officers and others in the area. Indeed, in the instant case, after Morales was shot six times, the Honda veered out of control, sped across the adjacent courtyard and crashed through the exterior wall of an occupied apartment. According to Officer Medina's police report:

> The vehicle was completely inside of the apartment with approximately 6 feet between the rear bumper and the exterior of the building. Heavy white smoke billowed out of the large hole and broth front tires remained spinning at a high rate of speed. I could also hear what sounded like the car horn stuck on. Shortly after, two Hispanic females ran out of the rear exit of the apartment. They appeared frantic and moved away from the building.

Viewing the facts in the light most favorable to plaintiff, a jury could find that Cote's use of deadly force was objectively unreasonable, in violation of Morales' constitutional rights. Moreover, under the precedent of Cowan, the law is clearly established. Cote would be entitled to qualified immunity only if he reasonably believed at the moments he fired that: (1) Morales posed a significant threat of death or serious physical harm, and (2) the decision to shoot under such circumstances was one that a reasonably competent officer would have made. See Cowan, 352 F.3d 756 at 763-64. "Because in this case genuine, material, factual disputes overlap both

6

the excessive force and qualified immunity issues, summary judgment must be denied." Id. at 764. For the same reason, summary judgment will be denied as to plaintiff's assault and battery, reckless and wanton misconduct, and state constitutional claims against Cote.

Defendants assert that aside from Cote, who shot and killed Morales, there is no evidence that any of the other officers used force of any kind or otherwise assaulted Morales. Plaintiff responds that one officer rammed the Honda with the police car, and at least two other officers aimed their loaded pistols at Morales from close range, despite lacking evidence of an underlying crime. Nevertheless, the court finds that officers Medina, Labbe, and Iovanna are entitled to qualified immunity from suit, as even when viewing the facts in the light most favorable to plaintiff, these officers did not violate clearly established law. See Pearson v. Callahan, 555 U.S. 223, 243-45 (2009). Under the circumstances, reasonably competent police officers could disagree on the legality of stopping the fleeing Honda with the police cruiser and displaying weapons upon non-compliant suspects. The officers cannot be faulted for failing to intercede, as there was no realistic opportunity to prevent the harm caused by Cote's gun shots from occurring. See Rogoz v. City of Hartford, 796 F.3d 236, 251 (2d Cir. 2015).

Accordingly, the court will deny summary judgment as to the claims against Officer Cote but grant summary judgment as to the claims against Officers Medina, Labbe, and Iovanna.

**Claims against Chief James Rovella and the City of Hartford**

Count IV of plaintiff's amended complaint includes conclusory claims that Chief Rovella and the City of Hartford violated Morales' Fourth, Fifth, Eighth, and Fourteenth Amendment rights, as well as his rights under the Constitution of the State of Connecticut.

The Fifth, Eighth, and Fourteenth Amendments are not applicable to the facts of this case, where the Fourth Amendment provides an explicit textural source of protection. Moreover,

7

plaintiff did not allege that Rovella was personally involved in the alleged constitutional violations. To state a valid municipal liability claim pursuant to Monell, a plaintiff's complaint must allege a policy or custom that resulted in a deprivation of a constitutional right. See Tedesco v. City of Stamford, 215 Conn. 450, 456-58 (1990). Here, plaintiff's complaint contains no allegations of a failure to train or supervise – or of any other policy or custom.

Finally, municipal liability pursuant to Conn. Gen. Stat. §§ 52-557n and 7-465 is predicated upon the negligence of municipal employees. Plaintiff responds that under Connecticut law:

> An actionable assault and battery may be one committed wilfully or voluntarily, and therefore intentionally, or one done under circumstances showing a reckless disregard of consequences. It may also be one committed *negligently*.

Russo v. Porga, 141 Conn. 706, 708-09 (1954) (emphasis added). Nevertheless, plaintiff's complaint explicitly alleges that defendants' conduct constituted "intentional assault and battery" (Count II) and "reckless and wanton assault" (Count III), but makes no allegations of negligent assault and battery against any of the individual defendants. "Under § 7–465, the municipality's duty to indemnify attaches only when the employee is found to be liable and the employee's actions do not fall within the exception for wilful and wanton acts." Myers v. City of Hartford, 84 Conn. App. 395, 401 (2004). Accordingly, summary judgment will be granted as to plaintiff's claims under § 7–465.

In contrast, § 52-557n permits a direct cause of action against a municipality regardless of whether an individual employee is named as a tortfeasor. Spears v. Garcia, 263 Conn. 22, 37 (2003). Plaintiff's Count V, which incorporates the facts alleged in paragraphs 1-30 of the amended complaint, alleges negligence against the municipality. Defendants' argument that plaintiff has failed to allege negligence against Chief Rovella

or any of the other defendant officers is not determinative of this statutory claim against the City. Summary judgment will be denied as to plaintiff's § 52-557n claim.

## CONCLUSION

For the foregoing reasons, defendants' motions are GRANTED in part and DENIED in part. Summary judgment is GRANTED as to all claims against Chief of Police James Rovella, and Officers Kenneth Medina, Kenneth Labbe, and Robert Iovanna; summary judgment is GRANTED as to the § 1983 and Conn. Gen. Stat. §7-465 claims against the City of Hartford; summary judgment is DENIED as to the Conn. Gen. Stat. § 52-557n claims against the City of Hartford; summary judgment is DENIED as to the Fourth Amendment, assault and battery, reckless and wanton misconduct, and state constitutional claims against Officer William Cote.

Dated this 15th day of November, 2017, at Bridgeport, Connecticut.

                                         /s/Warren W. Eginton
                                         WARREN W. EGINTON
                                         SENIOR UNITED STATES DISTRICT JUDGE